UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.  Criminal No. 5:15-cr-116-gwc

Trumaine Turane

### ORDER AND REPORT AND RECOMMENDATION
(Docs. 116, 118, 124)

Trumaine Turane, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to vacate, correct or set aside his sentence imposed in 2017. (Docs. 118, 124.) In conjunction with his § 2255 Motion, Turane also filed a Motion for Discovery seeking all discovery including *Brady* material and grand jury minutes. (Doc. 116.) Turane was convicted as a result of his plea of guilty to one count of possession with intent to distribute heroin and cocaine base, in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(C). (Doc. 79 at 1, ¶¶ 1–2.) Turane pleaded guilty pursuant to a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). (*Id.* at 5, ¶ 15.) On March 22, 2017, Turane was sentenced to a term of imprisonment of 48 months, to be followed by a 3-year term of supervised release. (Docs. 95, 96.) A direct appeal was taken and on April 20, 2018, the Second Circuit granted the government's motion for summary affirmance of the conviction and sentence. (Doc. 109.)

In his § 2255 Motion, as now supplemented,[1] Turane brings multiple claims. He asserts that his Fourth Amendment rights were violated when he was searched on July 23, 2015, because "[n]o amount of probable cause can justify a warrantless search or seizure absent exigent circumstances," and no exigent circumstances existed. (Doc. 118 at 2.) He also claims his Fourth Amendment rights were violated on July 7, 2015, when law enforcement officers used a body camera to record his identification, which he claims was an illegal search. (*Id.* at 3–4.) Turane asserts that although the court informed him that by pleading guilty he "gave up his line of legal attack on his arrest," he believed the waiver applied only to the district court proceedings and not to his ability to challenge his arrest on a "future appeal." (*Id.* at 4.) He further asserts that because "the suppression motion is a pretrial hearing, [he] believed that that line of argument[] was alway[s] open." (*Id.* at 4–5.)

In a supplement to the § 2255 Motion, Turane alleges his guilty plea "was broken" by the government because his plea agreement "said nothing about [him] not being able to challenge his suppression of evidence motions." (Doc. 119 at 1.) He argues his plea should be vacated because it was not knowing or voluntary where he did not understand he was giving up his right to challenge the denial of his suppression motions. (*Id.* at 4.) Turane also alleges his standby counsel was

---

[1] On August 12, 2019, the court docketed Turane's unsigned and undated handwritten § 2255 Motion. (Doc. 118.) Turane then signed, dated, and filed supplemental briefs on September 1 and 3, 2019. (Docs. 119, 121.) On September 10, 2019, the court ordered Turane to file an amended copy of his § 2255 Motion by October 18, 2019, "which shall be signed by Turane together with the phrase that it is signed under the penalty of perjury." (Doc. 122 (text-only Order).) On September 30, 2019, the court docketed a signed copy of the § 2255 Motion, dated September 17, 2019, and including the required language. (Doc. 124.)

2

ineffective for "let[ting] in hearsay by detective [P]lunkett that CI told detective [P]lunkett that Turane was the one who sold him heroin." (*Id.* at 6.) He further raised the issue of the return of his personal property seized at his arrest. (*Id.* at 2.)

In a second supplement to the § 2255 Motion, Turane contends that the presiding district judge was "bias[ed] with all decision[s,] . . . rul[ing] in the favor of the US Attorney on every opposing motion." (Doc. 121 at 1.) In sum, Turane argues that the court demonstrated bias by denying his suppression motions and motions for discovery, and by refusing to allow withdrawal of Turane's plea of guilty. (*See generally id.*)

The government argues in opposition that the Motion fails because it is untimely and, in any event, fails to raise any arguments that merit relief under § 2255. (*See* Doc. 125.)

For the reasons set forth below, Turane's discovery motion is DENIED. Furthermore, because it is concluded that Turane's claims are meritless, I recommend that his § 2255 Motion be DENIED.

### Factual and Procedural Background

### I.   Investigation, Arrest, Criminal Complaint, and Indictment

The records of this court reveal the following. On July 7, 2015, members of the State of Vermont Drug Task Force (VDTF) conducted two controlled buys of heroin from Turane through a confidential informant (CI). (Doc. 1-1 at 2, ¶ 3.) The buys occurred in South Burlington and Colchester. (Doc. 29 at 2.) After each controlled purchase, the CI advised police that the individual later identified as

Turane was the same individual who had delivered the heroin in exchange for money. (*Id.*) Police determined Turane's identity by approaching him after the second purchase and requesting identification, which Turane produced. (*Id.*) Turane was not arrested at that time.

On July 23, 2015, members of the VDTF were surveilling the Megabus bus stop on the University of Vermont campus in Burlington. (Doc. 1-1 at 2, ¶ 4.) They observed Turane get off a bus that had arrived from New York City. (*Id.*) VDTF Detective Matthew Plunkett contacted South Burlington Police Officer Michael DeFiore and requested that he approach Turane and confirm his identity. (Doc. 29 at 3.) Detective Plunkett advised Officer DeFiore that probable cause existed to arrest Turane based on the two prior controlled purchases. (*Id.*; Doc. 1-1 at 2, ¶ 5.)

Officer DeFiore located Turane at a local bus stop a short distance away from the Megabus stop. (Doc. 29 at 3.) Officer DeFiore, in uniform, approached Turane on foot, introduced himself, and asked Turane what brought him to Burlington. (*Id.*) Turane responded that he was there to visit a friend, whom he was planning to meet at the mall. Turane advised he was leaving town the next day. (*Id.*)

Officer DeFiore asked to see Turane's identification, which confirmed his identity. (*Id.*) He then asked Turane if he possessed any contraband and claimed he observed a change in Turane's demeanor when asked specifically about crack cocaine. (*Id.*) Turane consented to a pat-down search, during which Officer DeFiore detected a hard, round, foreign object in Turane's groin area. (*Id.*; Doc. 1-1 at 2–3, ¶ 5.) Turane denied having any contraband. He was then placed in handcuffs and

advised that he was under arrest. (Doc. 29 at 4.) Officer DeFiore transported him to the South Burlington Police Department. (*Id.*)

At the station, Turane asked Detective Plunkett why he was under arrest. Detective Plunkett advised Turane that he was under arrest for the two sales of heroin on July 7. (*Id.*) Turane denied involvement in those sales. Detective Plunkett advised Turane that officers were going to search him and seize the object concealed in his groin. (*Id.*) When given the choice between having officers do this or retrieving it himself, Turane agreed to retrieve the object on his own. (*Id.*) He then removed a satchel from his groin area, which contained approximately one ounce of cocaine base and 60 bags of heroin. (*Id.*; Doc. 1-1 at 3, ¶¶ 5–7.)

The next day, July 24, 2015, a Criminal Complaint was filed charging Turane with knowingly and intentionally possessing with intent to distribute cocaine base, in violation of 21 U.S.C. § 841(a)(1), on July 23, 2015. (Doc. 1.) The Complaint was supported by the Affidavit of VDTF Detective Giancarlo DiGenova. (*See* Doc. 1-1.) On August 6, 2015, a grand jury returned an Indictment with the same offense. (Doc. 11.)

## II. Motions to Suppress

In March 2016, through his third court-appointed counsel, Turane challenged the reasonableness of the July 23 search and seizure in a motion to suppress. (Doc. 28.) He argued the "suspicion" that he "was involved in an illegal drug transaction in early July did not supply probable cause sufficient to negate the need to obtain a warrant to arrest him on July 23, 2015." (*Id.* at 6.) He also argued the pre-arrest

5

interaction with law enforcement was a custodial interrogation requiring the administration of *Miranda* warnings before statements he made could be used against him. (*Id.*)

After holding an evidentiary hearing on June 8, 2016, and receiving post-hearing briefing from counsel, the court issued an Opinion and Order on July 28, 2016 denying the motion to suppress. (Doc. 45.) The court held that the *Terry*[2] stop was lawful, including a limited pat-down search, and, once Turane's identity was confirmed, there was probable cause for his arrest based on the July 7 sales of heroin to the CI. (*Id.* at 3–6.) The court rejected Turane's arguments that an arrest warrant was required and that he was in custody for *Miranda* purposes prior to his arrest. (*Id.* at 6–8.)

On July 28, 2016, the court also granted Turane's motion to represent himself. (Doc. 46.) On August 2, Turane moved for reconsideration of the court's denial of his motion to suppress. (Doc. 47.) On August 9, the court denied the motion to reconsider because the motion raised no new arguments. (Doc. 51.)

On August 24, 2016, Turane, representing himself, filed a second motion to suppress evidence restating the arguments that were rejected in the July 28 Opinion and Order. (Doc. 57.) On August 31, 2016 the court denied the motion, explaining it did not raise any new arguments. (Doc. 60.) Turane filed a motion to reconsider the August 31 Order, which was denied the same day. (Docs. 61, 62.) In

---

[2] *Terry v. Ohio*, 392 U.S. 1 (1968).

September, Turane filed four additional motions to suppress, which the court denied during the September 28, 2016 pretrial conference. (Doc. 73 (text-only entry).)

### III. Superseding Indictment

On October 6, 2016, Turane was charged in a Superseding Indictment with three counts: (1) on or about July 23, 2015, possessing with intent to distribute heroin and cocaine base; (2) on or about July 7, 2015, knowingly and intentionally distributing heroin in South Burlington; and (3) on or about July 7, 2015, knowingly and intentionally distributing heroin, in Colchester, all counts in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). (Doc. 77.)

### IV. Plea, Motions to Withdraw Plea, and Sentencing

On October 17, 2016, with the benefit of standby counsel, Turane was arraigned on the Superseding Indictment and pleaded guilty to count one, possessing with intent to distribute heroin and cocaine base, and not guilty to counts two and three, knowingly and intentionally distributing heroin. (Doc. 80 (text-only entry); Doc. 86 at 16–17, 19–20.) Turane pleaded guilty pursuant to a binding written plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), dated October 17, 2016, in which he "agree[d] to plead guilty because he is, in fact, guilty" of possessing with intent to distribute 60 bags of heroin and approximately 27 grams of cocaine base. (Doc. 79 at 1, ¶ 3.) That binding agreement called for a sentence of 48 months in prison. (*Id.* at 5, ¶ 15.) The plea agreement was not conditional under Federal Rule of Criminal Procedure 11(a)(2) and did not contain a reservation of the right to appeal "an adverse determination of

7

a specified pretrial motion," Fed. R. Crim. P. 11(a)(2), such as Turane's motions to suppress.

Following the complete colloquy required by Rule 11 of the Federal Rules of Criminal Procedure, United States District Judge Geoffrey W. Crawford accepted the guilty plea, concluding it was a knowing and voluntary plea, supported by an independent basis in fact. (Doc. 86 at 8–20.) Before concluding the hearing, the court engaged in the following discussion with Turane:

> The Court: I just wanted to make certain, since you are representing yourself Mr. Turane, you had filed quite a few motions regarding the suppression of different aspects of the evidence.
>
> Do you understand that by your plea agreement that you are giving up that line of legal attack on your arrest and the charge against you?
>
> Mr. Turane: Yes.
>
> The Court: Okay. I just wanted to make certain that you saw that the same way. You understand that when you plead guilty that makes those various motions seeking to challenge . . . your arrest, your stop, your search, . . . you understand that those issues are no longer live and part of your defense?
>
> Mr. Turane: Yes.

(*Id.* at 22:16–23:5.)

On December 29, 2016, Turane moved to withdraw his guilty plea. (Doc. 85.) On January 25, 2017, the court denied the motion, noting that Turane "simply wishes to have a different deal." (Doc. 89 at 2.) The court explained it had not yet accepted the plea agreement and would consider the propriety of the agreement based on information to be presented at sentencing. (*Id.* at 3.) On January 30, Turane filed a second motion to withdraw his plea, asserting his standby counsel had "misinformed him about his rights" and he wished to "keep open all his appeal

8

rights." (Doc. 90 at 1.)  The court denied that motion the following day.  (Doc. 91 (text-only Order).)

On March 22, 2017, Turane appeared in the district court for sentencing.  The court observed:

> [T]he binding plea agreement has . . . advantages and disadvantages for both sides.  But it seems to me it has at least as many advantages to you as it . . . has disadvantages.  The principal one being it gets you out from [a] much more severe potential guidelines sentence[], which I expect is the reason that it appealed to you . . . in the first place.
>
> It would be difficult to justify . . . with this criminal record and this offense level a sentence underneath the 48 months. . . .

(Doc. 100 at 18:7–16.)

The court concluded that, under the advisory Sentencing Guidelines, Turane faced a range of imprisonment of 151 to 188 months, based on an adjusted offense level calculation of 29 and a criminal history category of six as the court concluded that the career offender provisions found at USSG § 4B1.1 applied.  (*Id.* at 27–28.)  In so doing, the court granted Turane a reduction of one criminal history point but noted that the reduction did not affect the sentencing guidelines range of 151 to 188 months of imprisonment.  (*Id.* at 12–13, 25; Doc. 95 (text-only entry).)  The court reviewed the sentencing factors set forth in 18 U.S.C. § 3553(a), accepted the Rule 11(c)(1)(C) plea agreement and its binding sentence of 48 months in prison, and imposed a 3-year term of supervised release.  (Doc. 100 at 18, 28–31.)  The court granted the government's motion to dismiss the remaining counts and advised Turane of his right to appeal from the sentence.  (*Id.* at 33–34.)  Judgment entered the next day.  (Doc. 96.)

## V. Appeal

Representing himself, Turane timely filed a notice of appeal. (Doc. 97.) On August 14, 2017, his court-appointed appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Counsel concluded it would be frivolous—as well as against Turane's interest—to challenge the validity of the guilty plea or the reasonableness of his sentence. (*See* Doc. 125-1.) The government filed a memorandum of law in support of counsel's *Anders* motion and a cross-motion for summary affirmance of Turane's conviction and sentence. (*See* Doc. 125 at 14.) On April 20, 2018, the Second Circuit issued an Order granting counsel's motion to withdraw and the government's motion for summary affirmance. The mandate was issued on May 25, 2018. (Doc. 109.)

## Analysis

## I. Legal Standard Governing 28 U.S.C. § 2255 Motions

Under 28 U.S.C. § 2255, a federal prisoner "in custody" may claim the right to be released if their sentence was "imposed in violation of the Constitution or laws of the United States, or . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."[3] 28 U.S.C. § 2255(a). As the Second Circuit has

---

[3] According to the Federal Inmate Locator, Turane was released from federal custody on February 19, 2019. On October 1, 2019, Turane filed a notice of change of address indicating that he was at the Cape Vincent Correctional Facility, a New York State facility. (Doc. 123.) The New York State Department of Corrections Inmate Locator currently lists Turane as an inmate at the Gouverneur Correctional Facility. Although Turane was not in federal custody at the time he filed his § 2255 Motion, because his three-year period of supervised release has not yet expired, he is considered "in custody" for purposes of § 2255. *See Scanio v. United States*, 37 F.3d 858, 860 (2d Cir. 1994).

instructed, § 2255 review is "narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." *United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (internal quotation marks omitted). The petitioner bears the burden of establishing that he is entitled to relief under § 2255. *See Napoli v. United States*, 45 F.3d 680, 683 (2d Cir. 1995).

In addition to the statute of limitations, discussed in detail below, § 2255 petitioners face two major procedural hurdles. First, a § 2255 motion cannot be used to relitigate claims previously raised and decided on direct appeal. *See, e.g.*, *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010); *Reese v. United States*, 329 F. App'x 324, 326 (2d Cir. 2009); *United States v. Sanin*, 252 F.3d 79, 83 (2d Cir. 2001). A district court should dismiss a § 2255 motion raising claims already litigated on direct appeal, unless "there has been an intervening change in the law and the new law would have exonerated [the] defendant had it been in force before the conviction was affirmed on direct appeal." *Chin v. United States*, 622 F.2d 1090, 1092 (2d Cir. 1980). Second, under the "procedural default rule," a § 2255 motion cannot take the place of a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621–22 (1998); *see United States v. Munoz*, 143 F.3d 632, 637 (2d Cir. 1998). Claims not raised on direct appeal are subject to dismissal for procedural default.

## II.     The Motion is Barred by the Statute of Limitations

Under 28 U.S.C. § 2255(f), habeas motions filed pursuant to § 2255 are subject to a one-year limitations period, which runs from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f)(1)–(4).

Here, Turane filed a direct appeal and the Second Circuit affirmed his conviction and sentence.  Thus, for purposes of subsection (f)(1), Turane's 2017 judgment of conviction became final when his time for filing a petition for a writ of certiorari to the Supreme Court expired.  *See Clay v. United States*, 537 U.S. 522, 524–25 (2003).  Under Supreme Court Rule 13.1, a defendant has 90 days to file a petition for a writ of certiorari after entry of the court of appeals' judgment. Sup. Ct. R. 13(1).  Rule 13(3) clarifies that the "time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate."  *Id.* 13(3).  In this case, the Second Circuit granted the motion of appellate counsel to withdraw pursuant to *Anders v. California,* 386 U.S. 738, and the government's motion for summary

affirmance on April 20, 2018. (Doc. 109.) Therefore, Turane's judgment of conviction became final on July 19, 2018, when the ninety-day period for filing a petition for certiorari expired. Accordingly, under § 2255(f)(1), the one-year statute of limitations expired on July 19, 2019.

As discussed above, Turane first filed an unsigned and undated § 2255 Motion on August 12, 2019. (Doc. 118.) He then signed, dated, and filed supplemental briefs on September 1 and 3, 2019. (Docs. 119, 121.) On September 30, the court docketed a copy, signed by Turane on September 17, of his August 12 § 2255 Motion. (Doc. 124.) Even applying the prison mailbox rule,[4] and allowing for relation back of the later-filed signed August 12 Motion, Turane's § 2255 Motion was filed after the one-year statute of limitations had expired under subsection (f)(1).

Plainly, subsections (f)(2) and (f)(3) do not apply here. Turning to § 2255(f)(4), that section "establishes the date on which the limitations period begins to run; that date is determined by when 'the facts supporting the claim or claims presented *could have* been discovered through the exercise of due diligence.'" *Wims v. United States*, 225 F.3d 186, 188 (2d Cir. 2000) (quoting 28 U.S.C. § 2255(4), a prior version of what is now § 2255(f)(4)). Turane makes no argument that the facts supporting his claims were later discovered; indeed, he makes

---

[4] Under the prison mailbox rule, an incarcerated self-represented litigant's document is deemed filed at the time it was delivered to prison authorities for forwarding to the court. *Houston v. Lack*, 487 U.S. 266, 276 (1988). If it is unclear when an incarcerated self-represented litigant's document was mailed, courts assume it is filed on the day it is signed and dated. *United States v. Newton*, No. 5:11–cr–50–1, 2014 WL 348195, at *5 (D. Vt. Jan. 31, 2014).

13

arguments based on the same facts he has been highlighting since his suppression motions. Therefore, Turane's Motion is time-barred under § 2255(f).

## A. Equitable Tolling

Having found that Turane's § 2255 Motion is untimely, the court must assess whether the limitations period may be equitably tolled. The government concedes that the limitations period of § 2255(f) is non-jurisdictional and subject to equitable tolling. (Doc. 125 at 20.) In *Holland v. Florida*, the Supreme Court addressed the circumstances in which a federal habeas petitioner can invoke the doctrine of equitable tolling to overcome the statute of limitations. 560 U.S. 631 (2010). The *Holland* Court held that "a petitioner is entitled to equitable tolling . . . if he shows: '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.'" *United States v. Wright*, 945 F.3d 677, 684 (2d Cir. 2019) (quoting *Holland*, 560 U.S. at 649).

The Second Circuit has "set a high bar to deem circumstances sufficiently 'extraordinary' to warrant equitable tolling." *Dillon v. Conway*, 642 F.3d 358, 363 (2d Cir. 2011). A petitioner must also "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing." *Valverde v. Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). This demonstration cannot be made "if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Id*. "[T]he proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe

an obstacle it is for the prisoner endeavoring to comply with [the Anti-Terrorism and Effective Death Penalty Act of 1996's] limitations period." *Diaz v. Kelly*, 515 F.3d 149, 154 (2d Cir. 2008).

Turane makes no showing that he pursued his rights diligently and that some extraordinary circumstances stood in his way. Although Turane claims he was not aware of the final disposition of his appeal, the government advised him of the status of his appeal in a June 28, 2019 filing, attaching a copy of the Second Circuit's order and mandate. (*See* Docs. 111, 111-1.) In a July 1, 2019 Order, this court also noted that his appeal had been denied. (Doc. 112.) Turane filed two responses in early July following the government's filing and the court's order, but prior to the expiration of the limitations period applicable to his § 2255 Motion. (Docs. 113, 114.) More importantly, Turane had an obligation to monitor his action, especially because he initiated the litigation. *See, e.g.*, *U.S. ex rel. McAllan v. City of New York*, 248 F.3d 48, 53 (2d Cir. 2001) ("[P]arties have an obligation to monitor the docket sheet to inform themselves of the entry of orders . . . ."). In sum, Turane has not met the high burden required to warrant equitable tolling.

### III.   Turane's Claims are Barred by Waiver and Procedural Default

"It is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge, and, in the absence of a court-approved reservation of issues for appeal, waives all challenges to the prosecution except those going to the court's jurisdiction." *Hayle v. United States*, 815 F.2d 879, 881 (2d Cir. 1987) (internal citations omitted); *see also United States v. Yousef*, 750 F.3d 254, 256

15

(2d Cir. 2014) ("It is well settled that a defendant's plea of guilty to an indictment or information waives all non-jursidictional challenges to the resulting conviction."). Here, Turane's plea agreement was not conditional under Rule 11 and did not reserve any issues, including the denial of his motions to suppress, for challenge on appeal. (*See* Doc. 79.) Accordingly, by his plea of guilty, Turane has waived any pre-plea, non-jurisdictional claims. Additionally, to the extent his challenges of the denial of his motions to suppress and to withdraw his guilty plea were raised and litigated on direct appeal, those claims are barred as Turane has not demonstrated an intervening change in the law that would have exonerated him. *See Chin*, 622 F.2d at 1092.

Conversely, a claim not raised on direct appeal is subject to procedural default and generally may not be considered on collateral review. *See United States v. Frady*, 456 U.S. 152, 165 (1982) ("[A] collateral challenge may not do service for an appeal."); *Harrington v. United States*, 689 F.3d 124, 129 (2d Cir. 2012) ("[A] § 2255 motion is not a substitute for direct appeal . . . ."). Accordingly, Turane's claims of judicial bias, discovery violations, and admission of hearsay evidence are each waived as a consequence of his guilty plea and barred by procedural default as they were not raised on direct appeal. *See United States v. Richardson*, Crim. No. 5:14–cr–45, 2016 WL 2905525, at *4 (D. Vt. Mar. 28, 2016) (concluding that petitioner's § 2255 claims were both waived by guilty plea and procedurally defaulted), *report and recommendation adopted*, 2016 WL 2851548 (D. Vt. May 13, 2016). Procedurally defaulted claims may proceed on collateral review in limited

16

circumstances where "the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). As Turane has failed to demonstrate either cause or prejudice for his failure to raise his arguments on direct appeal, they are barred by procedural default.

Turane's claims are barred by the statute of limitations, *see Nosair v. United States*, 839 F. Supp. 2d 646, 650 (S.D.N.Y. 2012) (noting a court need not reach the merits of a habeas claim when the statute of limitations has expired), waived by virtue of his guilty plea, and are waived or barred by procedural default. Accordingly, I recommend that his § 2255 Motion be DENIED.

## IV.  Hearing Requirement

In ruling on a § 2255 motion, the district court is required to hold a hearing, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see Pham v. United States*, 317 F.3d 178, 185 (2d Cir. 2003) (finding that § 2255 does not permit summary dismissals of motions that present facially valid claims). To warrant a hearing, the defendant's motion must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact which, if proved at a hearing, would entitle him to relief. *Machibroda v. United States*, 368 U.S. 487, 495 (1962); *United States v. Aiello*, 814 F.2d 109, 113–14 (2d Cir. 1987).

Here, an evidentiary hearing is neither necessary nor warranted. Turane has failed to show specific facts which, if proved at a hearing, would entitle him to relief. The claims raised in Turane's § 2255 Motion, as supplemented, may be resolved on

17

the existing record, which conclusively demonstrates that he is not entitled to relief. Accordingly, because the Motion and other files and records in this case "conclusively show that [Turane] is entitled to no relief," there is no need to conduct an evidentiary hearing on the Motion. 28 U.S.C. § 2255(b).

## V.   Motion for Discovery

In light of my recommendation that Turane's § 2255 Motion be denied, his Motion for Discovery and All Material Evidence (Doc. 116) is DENIED as moot.

## Conclusion

Based on the foregoing, I recommend that Turane's § 2255 Motion (Docs. 118, 124) as supplemented (Docs. 119, 121) be DENIED.

Further, the court should decline to issue a certificate of appealability because Turane has not "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Generally, a movant meets this burden by demonstrating that "reasonable jurists could debate whether . . . the [motion] should have been resolved in a different manner or that the issues presented [a]re adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). Here, Turane has not met this burden, and thus I recommend that the court DENY any request for issuance of a certificate of appealability.

Dated at Burlington, in the District of Vermont, this 4th day of August 2020.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c).  Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).